May it please the Court, Ruth Burdick, appearing for the National Labor Relations Board. Good morning, Your Honors. Good morning. I'd like to begin by briefly noting and making clear that the view that Section 3345B-1, which is at issue here, the view that that applies only to first assistants is a uniform government view and not just the view of the NLRB. Is that expressed in any government regulation or anything to which we would owe Chevron deference? Chevron deference, no. The Vacancies Act is an act that is very rarely litigated. It operates well within its own parameters, and indeed the best interpretation of the act requires a careful look at congressional materials because those are our best materials. And here the Senate report, in the very second sentence of the summary of the act, clearly states the bill requires a first assistant who has not received Senate confirmation, who is nominated to fill the office permanently, can be made acting officer only if he is a first assistant for those 90 days. It was 180 they amended that. That was a primary push within the act itself. Two primary purposes of the Reform Act, which was the first major reworking of the law for 130 years, it was done on a very tight time frame. It had two of the key purposes were to better protect the Senate's power of advice and consent, and the second purpose was to give the President more options in designating acting officers because given time we learned that first assistants and previously confirmed federal officers, which would be under A-1 and A-2, were very often not available, particularly in times where a new president was being inaugurated and new options were needed. So B-1, as I read it, does not place any limits on who can serve if there is no nomination. So I'm not sure, tell me if I'm wrong about that, but your argument that this was intended to expand the pool of people who could serve as acting officials, I don't think really gets you where you need to go because I don't see how this has any limitation unless someone is nominated, so the pool is expanded absent a nomination regardless. Yes, Your Honor, I agree that that's not the purpose. The purpose that is reflected in B-1 is to better protect the Senate's advice and consent power, and here there was a history with the Department of Justice where first assistants would be serving and presidents would place people in the automatic position of being a first assistant, even if they were a nominee, and B-1 was intended to avoid this sort of manipulation where somebody could be automatically placed in office and be a nominee. In other words, the president could select his favorite person for the job, and then by way of getting them into the first assistant position they could automatically assume office, and this was generally seen as an end run around the Senate's advice and consent power, and B-1 was specifically enacted to address that situation with regards to the automatic seating of somebody, and I should note that this manipulation that they were trying to avoid is reflected in the Senate report and described as a purpose of B-1, and in the Senate report not only do they specifically say that B-1 is with regards to first assistants in that second sentence of the summary, in the section-by-section analysis, two full paragraphs discuss Section B-1, how it should operate, and its purposes entirely discussing in terms of first assistants. So you have this argument about first assistants, you know, the favorite person being picked and then being nominated. Isn't the motivation more that we worry that someone who doesn't have a lot of experience in this agency and doesn't sort of have the agency's interests first in their mind because they haven't been there for a long time might be too concerned about their pending nomination to put the agency first rather than the Senate's interests first? I'm not familiar with any materials that would reflect that, Your Honor, and here the Senate when they were providing in B-1 for the 90-day period of service in the prior year, and they were viewing that as a potential cure, the best they could do to hopefully indicate that the person serving who was a nominee and a first assistant at least had that agency experience and wasn't somebody who was just brought into the agency. And I should also make clear that not only does the Senate report in the section-by-section analysis in that full two paragraphs talk only about B-1 in terms of first assistants. If you look at B-2, the exemption from B-1 only is with regards to first assistants who have already received Senate confirmation. That's the same sort of principle you see in A-2 with previously confirmed officers serving, and that's the balance that they created in this. In looking at a section-by-section analysis, I've got to say I've read different provisions of this statute. A lot of times it's not exactly a model of clarity, but it does say a person may not serve as acting officer. It could easily say first assistant, and we wouldn't be here arguing about this, but it does say a person, which is a very expansive term. How do you reconcile that with your reading of the statute? Well, first of all, in our brief I think we give a couple explanations, but I'd like to begin by saying of course we would have all preferred clearer drafting here, and I should emphasize that those commentators and those close to and knowledgeable of the Reform Act knew that it was the greatest working for 130 years. Sections were individual, were combined and recombined, and sections added, and here it was all done in a very tight time frame as they moved towards trying to get the bill passed on the omnibus budget bill. So those who are knowledgeable of the background of this enactment realized that they were drafting irregularities, but in situations like this, just as we saw a couple weeks ago with the Affordable Care Act of Burwell, where Chief Justice Roberts made clear when you have that sort of a situation, it's imperative to look at the statutory scheme. But if there's a statutory reading here that would make all of the provisions make sense and be consistent with a rational purpose, then we don't need to do somersaults to read it some other way, right? I mean, you have this question about a person. You have what does notwithstanding mean. You have whether the little i in Section B is superfluous. There are lots of problems with your reading, and it seems like perhaps the company's reading doesn't have as many problems. So why should we? Well, the company's readings would override Sections A-2 and A-3 and greatly limit the President's option. In what way would they override them? If somebody was installed, a federal official who was previously confirmed was placed in the acting role and then nominated, under their reading of B-1, that person would have to no longer serve. Why is that irrational, though? I mean, maybe we think when someone is pending Senate confirmation, they're swayed by that process and shouldn't be running an agency that they've never been in before. Well, Your Honor, the purpose of protecting Senate confirmation power has already been—that person has already been vetted. There's no reason to doubt or—I mean, the structure of 3345A is any time somebody has previously received, as in B-2, a first assistant has been previously confirmed as an officer. The Senate has had a pass on them, and it's actually practical. But that's—so, okay, the Senate passed on them for running the EPA. Why should they be able to run the NLRB? I don't understand why that means you're qualified for any job. Well, the Senate confirms people. There's a certain level of basic qualifications and clearance of members. And so that vetting is available. I mean, we've all been Senate confirmed. I don't think I am qualified to run the NLRB. And it might be different for judges, but the traditional way of running a confirmation hearing, there's a great deal of questions from the Senators to the nominee. Have you ever served at this agency? Have you stepped foot on property? Right, right, but just because they've been Senate confirmed, I mean, they could have been Senate confirmed for the FBI, and now they're nominated for the EPA. I mean, why does that mean you're qualified? Why isn't it reasonable to say maybe this person who's all of a sudden in a different agency and is pending nomination in this new agency, you know, maybe should not be running the agency while they're pending nomination for this totally new job? I mean, that doesn't seem irrational. Well, just as SES positions are very transferable from agency to agency, I think there's a view that once you're a federal officer of a certain level, under A2 you could step into the agency and take over operations. In a prior version, it makes it much clearer that B1 is limited to first assistance, and so I wish that some of that clarity would have made it into the final version, but I didn't see anything between the prior version and this current version that was enacted that would have prevented B1 from being read the same way. First of all, Senator Thompson, who was a sponsor of the bill, actually in final remarks, immediately prior to the passage of the bill, made clear that B1 applies only to first assistance and not those serving under A2 or A3. But we can't look at that if we think there's a reading of the statute that gives all the provisions meaning and makes sense, right? But it is the government's view that there is no other reading other than B1 applying only to first assistance nominees that would give meaning to all of the provisions of 35. What does notwithstanding mean then? Why is notwithstanding there? Notwithstanding is a clause that signals that you are about to be delivered a restriction. Here it says, notwithstanding section 1A, which regards to the first assistance, no person may serve under this section. Or A1. You've got to look at that whole phrase, notwithstanding subsection A1, which refers specifically only to first assistance. So under your argument, because it says notwithstanding A1 versus just notwithstanding subsection A generally, it means that the phrase modifies only A1, which applies to first assistance. Did I get your argument correctly? That's correct, Your Honor. That's our view. And under this section can very easily be explained by the fact that in the following section on exclusivity, the Senate preserved 41 different already existing statutory provisions and individual acts, individual statutes, where a president could designate somebody under that act. So under this section simply meant, as could be read very reasonably to be, if you look at all the sections and look at exclusivity, to mean that it's in contrast to what could be done under the other act. And also in the same context, the word person, because those other acts require more than just first assistance. They include other people. So it's very reasonable if you take that provision, read it in with 345, with the limitation on 1A versus A. It all reconciles. Does B1Ai have any meaning in your reading? Yes, it does. And this has come up in a couple different contexts. It's important to note that in the guidance of the Office of Legal Counsel issued immediately after enactment, they made a mistake that they later corrected, and that is with regards to question, I believe it's 14, regards to, I don't have it specific. It's immediately, it's 14 or 15, where they originally thought that a first assistant had to already be in the office at the time of the vacancy in order to serve as a first assistant. And they clarified that that was not the case, and they did so in an opinion where they applied it to the facts and looked at legislative history. And somebody does not need to be in the office and acting as a first assistant at the time of the vacancy. They could be inserted into the office later, as long as they, if they were the nominee, also had been at the agency for at least 90 days in the prior year. But what about little I? The 90-day part is I, I. What about little I? I mean, don't we already, on your reading, this only applies when the person is a first officer, so then little I says they can't serve if they weren't a first officer. It seems totally redundant. What's the purpose of that? Well, it's not, they did not serve in the position of first assistant. Sorry, first assistant, not first officer. Right. In this situation, it makes sense. Like, if you had never done it. Right, but if B-1 only applies to A-1, A-1 already tells us that the person was a first assistant. So what would be the purpose of having little I that says you can't serve unless you are a first assistant? Well, it's an or clause. And here, I mean, they're making clear that you're barred from doing it in the only circumstance in which you could is if you're over 90 days. Isn't the answer is it's just bad wording? Yeah, it's bad wording. And, you know, and as I said before, we would all have preferred better drafting. And those who know the act know that it was, it was, it was rushed. It was a complete reworking. And under those situations, it's extremely important to look at congressional design. And not only did Chief Justice Roberts make that point in the Burwell case recently, he cited, in fact, Justice Scalia making the same point. The words of a statute must be read in their context and a view to their place in the congressional scheme. And here, we have an act that's very rarely litigated. And we have a uniform government view that's expressed in the legislative materials, the Office of Legal Counsel from the Justice Department, and the General Accounting Office, which, or Accountability Office now, that monitors and oversees the act. And I should say that I'd like to make one more quick point that the act provides for oversight. All the reporting of vacancies, who fills them, how long, when nominees are sent, nominations are sent to Senate. Not only does Senate have that information, that information is collected. And if there appears to be, with the comptroller general, if there appears to be a violation, they are automatically required to notify the president But you're not arguing that this oversight power means that these interpretations get Chevron deference. I understand that from your first answer to my first question. No, this isn't a Chevron deference case. This is a pure question of law. And as we note in your brief, the standard review... So the government interpretations don't have much weight, right? Well, here, yes, they do. As Chief Justice Roberts indicated, as Justice Scalia has indicated, when you're dealing with a law, particularly with drafting errors, it's very important to look at the congressional scheme. Well, maybe the legislative history, but you're telling us that there are subsequent interpretations by the executive branch interpreting this statute, and you're not arguing that those interpretations get Chevron deference. So I'm trying to figure out whether we need to consider those at all. That guidance went out to the agencies, and that guidance is what the agencies are following. So in a lot of ways, what I'm pointing out is the practical workings of government, which very importantly need to continue with temporary acting officers filling these positions. It's important to look at how the government is actually operating, and usually it's operating perfectly fine, and these cases are very rarely litigated. So the government's view in the practical application are very important. These are matters also in the Noel Canning case. They looked at the practical application in Senate traditional practices. Can I ask one question about your reply brief? In your reply brief, you suggest that none of this is jurisdictional anyway. Yes. Had you ever raised that argument before the reply brief? Well, I don't... Did they claim... They didn't claim until... Well, I guess... Okay, maybe let me ask an earlier question. So when you say you don't think this is jurisdictional anyway, are you saying that we shouldn't matter, that none of this matters, we shouldn't be worried about any of these issues, about who was appointed and who had authority, because none of it matters, because there's a complaint here and it raises a labor violation and that's all that matters? My understanding is slightly different than that, Your Honor, if I may. The other side's raising the claim that a defect in the filing of the petition or the complaint or defect in the authority of somebody taking those actions would raise a matter of your court's jurisdiction. That's the sub-issue. The jurisdictional issue doesn't run to the Vacancies Act. It runs to their notion that the delegation of power was not proper. But all of this about whether Solomon could be an acting general counsel... Yes. Do you deny that we need to resolve that question to figure out whether this case can go forward in the district court? It is my view that that's the live issue in the case, and that's the only live issue in the case. The delegation issues have all been solved by subsequent decisions. For instance, after the Noel Canning decision, it's very clear that Member Becker's appointment is valid. The Tenth, the Fourth, and the D.C. Circuits have now specifically upheld his nomination as valid. Your case in Frankel v. H.T.H. takes care of the remaining of the other side's arguments with regards to delegation. Okay, I just thought the beginning of your reply brief maybe suggested that you thought Solomon's authority didn't matter, but it sounds like you're not saying that. No, no, I'm not saying that. All right, our questioning is taking you over time, but thank you very much for your argument. I appreciate the extra time. And if I may just mention one more thing, I may have to give up a portion, maybe one minute. Well, actually, you're over time.  Thank you. Thank you, Your Honor. Good morning. My name is Gary Laughland. I'm here on behalf of Kitsap Tenant Support Services. I need to ask the Court a favor as we proceed. I find myself, as of last Thursday, firmly entrenched in old age and geyserliness because I have been given hearing aids. One of the problems I have with the hearing aids is getting used to them, and I sometimes think I'm speaking louder than I am, and so my voice may go down. If my voice goes down, please signal to me or throw something or let me know. We'll let you know. I figured you would do that. This case implicates the questions of whether Mr. Hooks, the Regional Director of 19 of the NLRB, has standing to bring the action in the Court below. Standing is not presumed. The burden is upon Mr. Hooks to establish standing. It also implicates the questions of whether the executive branch of government and its agency, the NLRB, has to follow rules, rules that it established, rules the Court established, and rules that Congress established. It also touches upon a very important constitutional concept, the separation of powers and the appointment clause in Article II, Section 3. There are two key issues here, though, delegation and designation. The delegation is whether the recess appointments were valid or not. Correct. Whether under the Federal Vacancy Reform Act, whether the designation of the acting general counsel was valid or not. Correct. And it also involves whether the Federal Vacancies Reform Act is the correct vehicle for the appointment of the general counsel. Okay. But first of all, there's one area in which general counsel, Mr. Hooks and I, do agree, and that's in his brief. He says the facts are not necessary to the resolution of the issues on appeal. But he then spends seven pages reciting facts, alleging the bad things that Kitsap Tenant Support did, underlying the unfair labor practices. But Thornhill Publishing says that there's no presumption of the truthfulness of those allegations in the issue of standing. And perhaps even more important, if you look at the record after some three weeks of trial before an NLRB administrative law judge, that judge found against the allegations of regional director, except on a couple of very minor issues. Hooks overlooks that. One of the problems I'm having with your side, and I think your colleague on the other side raised it, is your interpretation of 3345. There's going to be basically no candidates available for the president to appoint if you apply B-1 to A-1, A-2, and A-3. And that just seems nonsensical. I don't think that a reading of the Federal Vacancies Reform Act leads to that, if indeed that is the appropriate vehicle to use. Tell me why. The Federal Vacancies Reform Act has in the first section the automatic succession provision, where the first assistant shall assume the duties. Shall is mandatory. The next two sections give the president the appointment power to go notwithstanding the first assistant assuming the positions, that the president may appoint a principal officer of another agency who has been confirmed, nominated by the president, and confirmed by the Senate. That implicates concerns you have about whether or not that person is qualified. But the next part is, as long as that person is not nominated, right? And so as long as the person is not nominated, the pool is not narrowed. Is that right, under your reading? It does. The pool is there. But then the next one, the third option, is that the president can name a career officer, a senior career officer who has worked in the agency more than 90 days and is above a certain, I think it's GS-12. Fifteen. Fifteen, thank you. And that's what the NLRB, what Mr. Hooks is relying on. The problem with that is that they have to prove it, and I think other than an allegation on page 23, footnote 9 of their brief, there's no evidence to that effect before the court. But let's even assume that he was the senior thing. The following section says, notwithstanding the automatic succession, that person, the senior career official, can serve for the periods of time, which is 210 days or until nomination, and then another 200 days after that. So there's a long period of time, unless he's submitted, the nomination is submitted to Congress. That's the key provision there. As you read it, the phrase is, notwithstanding A-1, or as you indicated, notwithstanding the automatic ascension of the first assistant. So why isn't it just as reasonable, if not more so, to read subsection B-1 as a limitation on the automatic ascension of first assistants? Because automatic ascension doesn't apply to anybody but the first assistant, right? Correct, but it would be read nonsensically because the first assistant is there already working, and they say, but the first assistant can't be the first assistant unless they've been there more than 90 days. Well, it's not nonsensical. The idea is that somebody who doesn't have the experience with that agency he's nominated isn't going to be able to serve as the acting. We have Mr. Richard Griffith, who's currently the general counsel of the NLRB, had no experience with the agency, who was the general counsel for steel workers. He's now the general counsel of the NLRB, with advice and consent of Senate. But what's happening, what the president is avoiding, is the advice and consent of Senate, which Article 3 recognizes is important for a principal officer, which the National Labor Relations Act requires for the appointment of general counsel. And what we have in this case is Mr. Sullivan served three years and five months without consent of Senate, having been rejected by the Senate twice. What do you make of counsel's argument, the board's argument, that the way that the legislative scheme was really designed, consistent with its legislative history and the statements by the drafters and sponsors, is that this provision, B-1, was designed to apply only to first assistants? I don't think you have to get to the legislative history, because if you can read the statute as being clear, which I think it is, then you don't go to the legislative history. And I might point out that Judge Gleeson of the District Court of Alaska, in the Hooks versus Remington Lodge case, found that the argument we made was correct. And I can provide you the site, but that occurred I think in July of last year, 2014. But we're also missing the fact that there are other matters that the court can find that preclude Hooks' standing. First of all, the NLRB's own rules say that the acting general counsel, the regional director is named by the general counsel and is approved only upon approval by the board. Mr. Hooks was named in early January of 2012, 2011. And at that time, the Supreme Court found that the recess appointments to the NLRB, who approved him, were invalidly appointed under the Recess Appointments Clause. So under their own rules, Hooks was not validly appointed. Let me get back to the statutory interpretation, because I think that's the issue that's most difficult for me, is just to read the statutory text and try to discern the limitation of B-1 and exactly what it applies to. Because frankly, I'm not sure that the statutory text itself will answer the entire question. Reading it your way would mean that we are going to take the phrase notwithstanding subsection A-1 to mean notwithstanding subsection A. And then reading it the board's way will then sort of limit the term A-person to first assistant. So counsel had raised the legislative scheme, legislative history, to sort of support the board's interpretation that the limitation is to first assistant. Is there anything in the legislative history that would help us, sway us in your favor, in terms of looking at the meaning of this plain text? I believe there were comments by Senator Byrd that followed Senator Thompson's comments that support the version that we said, and they are cited in our brief. But I go back to... What are those comments? Refresh our recollection. Boy, I'd have to pull the brief to do that. I apologize. I'm still having a problem, though, with your interpretation, because I think you're only going to have one, maybe two candidates for the president to appoint if we apply B-1 to A-1, A-2, and A-3. But they have a pool of candidates that are available unless or until the president submits the name, the nomination to the Senate. And they can serve for 210 days. That's plenty of time. It does narrow the pool, though, because under your reading, once somebody's nominated, let's say that person is a pretty senior, seasoned member of the agency, is a GS-15 or above, and then gets nominated. Under your reading, that person's essentially boxed out of serving as acting, right? Because that's an A-3 category person. And why is that? Because the preference for the appointment of a principal officer is with the advice and consent of the Senate. And this is a very important position. The general counsel of the NLRB develops and pursues the national labor policy. There are, what, 300 million people in the United States? Don't you think the president of the United States can find one of those 300 million who are acceptable to him and to the Senate to fill this very important position? But your position is once the person's nominated, they have to stop serving. And why would that be true if what's trying to be encouraged is Senate confirmation? Because if Senate hasn't confirmed them within that period of time and aren't going to do that, then... So you think if the nomination happens fast enough, they can continue while nominated during the 210 days? Yes. How would that fit with the reading that B-1 says you can't... I mean, on your reading, under B-1, you cannot serve if you're nominated. It doesn't. It doesn't fit with that? It does not. Tell me, explain. I'm having a hard time doing that. It's complicated. The first assistant automatically serves. An appointed principal official can serve, and a senior official can serve. The senior official who has not served as first assistant and who has not worked more than 90 days can serve unless or until the name is submitted to the Senate. That's the reading of the statute that I see. That's the reading that Judge Gleeson found. I think that is the correct reading. And all of that is focused upon supporting the constitutional limitations. That's my belief of what this is about. But I go back to the other issues with Mr. Hooks. Mr. Hooks was not approved by a board with a valid quorum. Under their own rules, he didn't have authority to act. They then try to get around that by simply saying it doesn't matter because it was simply delegated by the acting general counsel, and he could delegate to anybody. But it's not a question of what he could have done. It's a question of what he did. He delegated to Hooks, and Hooks was not validly appointed. Under the NLRB-owned rules, he wasn't validly appointed because the board didn't have a quorum and wasn't validly appointed because Mr. Solomon had not been validly appointed. I'm sorry. I just want to make sure I understand what you're saying about someone who's a GS-15 who's been at the agency for three years can be designated as the acting director. But then what happens, in your view, when that person is nominated? Say as soon as they're designated acting director, 10 days later they're nominated. What happens? Do they have to stop, or can they continue? They cannot, under the plain terms of the statute, continue. Their authority to act ends at the point it's nominated. That's what I thought you were saying. So if that's true, then there is tension with this idea that we're trying to encourage Senate confirmation, right? Yes. So I thought that maybe this statute was about not having people in the office who are worried about Senate confirmation. It's sort of an opposite policy concern. Yes. Why are you giving in to this idea that the problem is to— I mean, I'm not sure if you're agreeing with her or not, but why are you saying that the goal is to encourage Senate confirmation? Because the Constitution requires advice and consent of Senate for principal offices. And that's what's encouraged. The NLRA says that the general counsel has to be confirmed by the Senate. So that's the focus. But say we don't agree with you about that, and we think that 3345 is an alternative way to appoint people. Are you saying that you think 3345's purpose is to encourage Senate confirmation? Yes. Why are you saying that? Because I think you read it together with the Constitution. I think you do. But you just acknowledged that it has this contrary effect. It has an effect, yes. Let me ask you a question about another statute we haven't talked about, 3346. You had indicated once the president nominates the person, then he's out. And I thought 3346, the whole purpose of 3346 was to encourage nomination, and then the person can continue to serve. And, in fact, 3345, A2, and A3 refer to 3346. Correct. And under 3346, once the president nominates the person, the service is extended. Correct. So my question is, you're saying the person's out once you're nominated, but 3346 says, no, you're not out. You get, in fact, you get an extension to serve. They can serve for no longer than 210 days unless they are nominated, and then they're no longer able to serve. Wait, I thought your answer was going to be that 3346 only applies to first assistants who have been there long enough because they can serve after they're nominated. It probably does. It probably does. And so that section, that whole provision, talks about how long a first assistant can serve. Yes. Right. And as I was asking counsel, 3346, the provision that sets out the 210-day limitation unless you're nominated, that was specifically referenced in the prior version, which makes it clear that B1 applies only to first assistants. Yes. That clarity didn't get extended to this current version, fortunately. But we thank you very much for your argument. Our questioning has taken you over time. It's been very helpful from both sides, and the matter is submitted.
judges: Carney, Nguyen, Friedland